MARK S. WERNER
Deputy Federal Defender
Federal Defenders of Montana
Billings Branch Office
2702 Montana Avenue, Suite 101
Billings, Montana 59101
Phone: (406) 259-2459
Fax: (406) 259-2569
mark_werner@fd.org
Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> WILLIAM KRISSTOFER WOLF, <br><br> Defendant. | Case No. 15-49-BLG-SPW <br><br> **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE AND REQUEST FOR PERMISSION TO FILE MOTION** |

**A. BACKGROUND.**

Defendant is charged by Indictment with two counts–Illegal Possession of a Machine Gun (Count I) and Possession of an Unregistered Firearm (Count II). In Count I, defendant is charged with knowingly possessing a Machine Gun, i.e. a Izhmash, Model Saiga-12 12 gauge shotgun in violation of 18 U.S. C. § 922(o). In

Count II, he is charged with knowingly possessing this same machine having a barrel length of less than 18 inches, and which was not registered to him in the National Firearms Registration and Transfer record in violation of 26 U.S.C. § 5841, 5845, 5861(d) and 5871.

Defendant, who lived outside of Bozeman and worked in the Bozeman area came to the attention of the FBI and law enforcement because of his bringing to the public's attention the corruption in government and the need to address it. He frequently hosted an internet webcast from November 2013 to November, 2014 called "The Montana Republic."

In the first section of its pre-indictment Criminal Complaint the government alleged that defendant's purpose in these webcasts was to highlight violations of citizen's rights in the Bozeman area, and educate the public on countering government actions at the local, state and federal level which overstepped the constitutional rights of citizens.

The complaint alleged that defendant advocated citizens' arrests of public officials who were violating the law, and the targeting of law enforcement officers when there was probable cause to believe they were violating their oath of office or committing a criminal offense. It alleged the defendant called for a restoration of the constitutional republic via taking control of government at the local level and expanding that control to larger areas. It alleged that webcasts detailed the taking out

of bridges, power grids and seizing law enforcement vehicles and weapons. It alleged defendant stated multiple times that government agents to be the true enemy of the American people, including agents of the judiciary and police officers. The complaint alleged defendant compared shooting law enforcement officers to gopher hunting, and that once a "few of them get popped," it would deter officers and they would be nullified. It alleged defendant did not believe in any thing not extreme, and that he stated a war with the government was imminent and no one would be safe even if they are wearing a badge or a robe. Lastly the government alleged defendant advocated that the time for talking was over.

    The FBI obtained the services of a confidential human resource (CHS) to befriend and carry on discussions with defendant. An undercover FBI agent, (UCE) posed as a like minded patriot who had views and aspirations similar to the defendant. Defendant and UCE first met on October 10, 2014 and had four subsequent discussions. The last one was on March 25, 2015. On that date UCE brought with him a firearm which defendant allegedly knew was not only a machine gun but which also had an illegally short barrel. The government alleges defendant took possession of the firearm, knowing what it was and after paying UCE $725.

    Leading up to the March 25, 2015 transaction defendant had recorded conversations with CHS and UCE in which his intent to develop a flamethrower was discussed to use against police officers and to combat police armored vehicles. The

Bozeman Police Department had recently acquired such a vehicle.  At a meeting on December 18, 2014 the government alleges that UCE told defendant he would ask his contacts about acquiring a flamethrower and that defendant then asked UCE to get him a Russian automatic shotgun.

On January 28, 2015 it is alleged that defendant told UCE that he preferred the Saiga-12 gully automatic shotgun due to its durability.  During this same meeting there were discussions about the purposes of such a firearm such as to handle most riot crowds and cops and to "clean house."  UCE told defendant that his supplier acquires his weapons from the military and with his supplier there's no paper . . . no one knows you've got it.  Defendant and UCE met up again the next day on January 29. On March 18, 2015 CHS played for the defendant a video of UCE describing and shooting the shotgun which allegedly was the one destined for defendant on March 25.

### B. THE PURPOSE OF DEFENDANT'S MOTION

The government is planning to introduce at trial a number of audio tape segments for the jury's consideration.  These segments come from various "Montana Republic" webcasts and contain inflammatory and/or irrelevant statements to the issue at trial—whether knowingly possessed a machine gun with an illegally shortened barrel.  The government also plans to introduce at trial audio tape segments of recorded conversations between defendant and either CHS or both CHS and UCE.

Counsel believes these audio taped segments played at trial would be unduly prejudicial to defendant receiving a fair trial, and that they do not bear the proper relevance to the issue of defendant's knowing acquisition and possession of this machine gun with the shortened barrel.

After reviewing the audiotapes, 302 reports, and videos, counsel has been finally able to determine which of these audiotape segments he is requesting the Court to exclude. The government supplied to defendant the webcast segment information on August 10, 2015 and the recorded conversation segments somewhat later. Although counsel previously requested the Court to extend the pretrial motions deadline for a short period, it was not possible for him in the midst of his caseload, to digest and determine what if any segments should be the subject of a motion in limine. With the Court's permission defendant asks that these segments be considered at this time for exclusion from trial. Trial is set in this matter for November 2, 2015.

### C. WEBCAST SEGMENTS DEFENDANT SEEKS TO EXCLUDE.

**May 27, 2014 Webcast.**

Defendant asks the Court to exclude from evidence at trial the following segments (defendant statements) from this webcast.

1hr. 38 min. 16 sec to 1:40:22. *" I don't believe in reconciliation but I do believe that we have to do everything we can because folks once it starts there will be no peace treaties. It will be a winner take all event. And it won't be a staged event. This is for all the marbles. If the shooting starts this is the end game for not only*

*America but for the world. And this is why I'm trying to do literally everything that we can. That's why I wanted this petition brought forward. Not because I think a petition is going to get them off their lazy butts and do anything, but it gives us legitimate standing, like our founding fathers to move forward and say "we told you so.". . . But the problem is once this starts it's going to be a free for all and not even the federal government is going to be able to handle it. I believe firmly that all of the gangs, bikers, drug gangs–all these foreign actors or agents who want America to be theirs–I believe it's going to be a religious war, a race war–I would really like to see that not happen."*

1:42:18–1:43:11.  ". . *until we get the agents and agencies of the federal government out of our local law enforcement, our local peace officers, we don't stand any chance but shooting. I know some of you disagree but I firmly believe we could use this to our advantage even if for a brief moment before whatever sheriff gets put in the ground. Or shot or run over by a drunk driver. . .there's a hundred ways this could go bad. But if we don't do something there's not going to be a peaceful result. And that's what I'm hoping for.*

1:53–1:54. "*Right now, here in Montana, I can tell you how its going to go. We have a favorite sport up here called gopher hunting. We hate the little varmints so we go out there and we shoot them when they stick their heads up. Imagine what its going to be like when it actually happens. All our local law enforcement agents who have been the bane of constitutional freedom are gong to stick their heads up .*

**June 10, 2014 Webcast.**

1:12:21-1:13:26.  "*Just ask the French and Germans when they went into Russia. You can make their advances so painful that it's not worth the cost. Because there's not going to be any peace treaties–any Treaty of Versailles. When this goes down the winner takes all. This is going to be for the brass ring. It's not going to be like ok we give up. They are going to enslave us and put us in for life or we are going to win and they will never see the light of day again. This is the way it's going to work. Please get this in your head. It's not going to be a little bit of shooting and ok we understand we're going to stop now.*

**July 8, 2014 Webcast.**

1:57:23. . "*I would love to have one of them call me and go I'm sitting in this courtroom right now and the judge is violating the constitutionally protected rights of a citizen. And I pop down to the court room. I swear him as a full bonafide deputy,*

*get him to give his sworn testimony right there in the courtroom. Then we haul the judge off the bench right here in front of everyone. That's the kind of law enforcement I am speaking of. Constitutional law, not the legal system."*

*"My son died for this nation. I'm not going to sit by and watch any other child die in this nation because a government wants to take your tax money and give it to some embassy so they can distribute it in the name of humanity."*

*"We are about to hear the shot heard around the world yet again. Question is, what side of the barrel you're going to be on? You going to be on the one pointing the barrel, pulling the trigger or are you going to be on the receiving end of it? I know a good many people that are going to be on the receiving end of it. I know there are a good many people waiting for it to start. . when the war starts, there won't be anyone who is safe. Just because you have a badge or a black robe isn't gong to protect you. And there are people out there who want that."*

**July 29, 2014 Webcast.**

54:20.-56:03 *"I'm not giving up on arresting the judges. . I'm going to turn over documents to a committee of safety for their review that there may be a complaint. If the committee of safety comes back and says I have a complaint, not only will I go before the media, I will go before the affected officials, which in this case are two county commissioners, tell them that the committee of safety has found them guilty, that they are to resign or that I will file charges against them and I am gong to arrest them. And then arrest them. Have the militia ready to take them from their home, a restaurant, you know. . .where they walk out in public. Not kidnap them. Just publicly hold them there until the police or law enforcement come. And the media. And they will see and watch the sheriff not do his job.*

**September 30, 2014 Webcast.**

42:48. *. Any revolution, any restoration, any civil war, whatever the heck you want to call it, will be short, it will be ugly, it will be bloody. But what it will turn into is a race and religious war which in itself will be long and drawn out. This is why I say the government does not have enough military force to take on the entirety of the United States of America even with a reduced population of gun owners and patriots. . . Local law enforcement will be targets right off the bat. . . that's the reality of the matter. You have to look at who the true enemy is."*

**October 7, 2014 Webcast.**

23:45-24:15. *"This has to be a local war folks. The point of this revolution is to regain control of our nation one city at a time so rapidly and remove the true criminals–the judges, the law agents and the politicians, and then as Gary's plan talks about set up a Committee on Safety–get it going and go help the next town. We're not conquerors. We're just removing the vermin.*

40:44. *"As it sits I believe that all agents of the government, all judiciary, and all police officers are targets until they stand up and start punishing their employees as hard as they are punishing us, and start standing up to the thin blue line. . . They have become an enemy of the Constitution. They pick and choose and bend and twist it. They should be dealt with as such. When they start to fear their lives they will start to first look at the Constitution. Otherwise they are targets.* 43:11.

1:40:10 –1:41:34. *" The corruption is that deep. And it took this time to find it out. And to prove it. There is a question. When are you going to fire your rifle against the government? Do we start or do we end the war. Now the war has started. But do we start the conflict? I think and it's just my personal opinion as well as some other people who are looking at this, that when they start the crap, we make it personal. We shut the power down. Like Gary said we go after the armored vehicles. The Russians figured it out when the Germans introduced the . . tank, more armor on it than most. . so they just lit it on fire. These people turned it int o an easy bake oven. These people can't live in a tank. And if they do they're not effective. They only have a certain amount of gun ports. Well last time I checked a flame thrower will go through a gun port. Folks you're going to have to shoot at some point. You're going to have to take action."*

1:53:05-1:54:50. *You need to stop being afraid. Make peace with your God and then prepare to make some pieces of our government agents and agencies because whether you are 20 or 80 when your time to go happens, it's not going to be because the federal government did it or a drunk driver. It's going to be because it was your time. You might as well use it at its best. You might as well do everything you can to restore this constitutional republic.*

22:40. . . . *"I want a second American Revolution because I do not believe there is any other peaceful solution."*

1:53:48.  "*I know that time for talking is almost over. I know that being part of the bigger picture and sacrificing sometimes is going to have to happen. I do believe we have to write our congressmen and put the fear of God back into them, the fear of the patriot back into them. Do I think it's going to work? No. As long as they have the thugs in their jack-booted uniforms hiding behind the badge, as long as they have their friends behind the robes, they think they are safe. They're not. Because like you and I, they are only human and this is a frail body that we have.*

### D. RECORDED CONVERSATIONS SEGMENTS

The government intends to introduce segments of audiotape conversations between defendant and UCE or between defendant and both CHS/UCE.  These segments come from conversations which took place on December 18, 2014, January 28 and 29, 2015, March 18, 2015, and March 25, 2015.  Defendant requests that these segments be excluded from presentation to the jury because they are not relevant to the issue of whether defendant knowingly acquired and possessed a short barreled machine gun.  Further they unfairly prejudice him.

Defendant is not seeking the exclusion of all the audio tape segments the government intends to introduce. Defendant understands that the government is allowed to introduce such segments which bear directly on defendant's discussion of any need for machine guns or the machine gun which is at issue in this case along with its characteristics.  However, the government is also intent upon introducing segments containing discussions by defendant of the use of flame throwers, napalm, hanging public officials, body armor, the need for force against the government, comparing shooting cops to shooting gophers etc.

These are meant to unfairly inflame the jury against the defendant and are off the track.  The issue to be decided here is if the defendant knew he was acquiring a machine gun with a shortened barrel.  His statements against government agents and the use of various armaments in the event of a war between the people and the government, does not prove the issue of this case, as it would inflame the jury against defendant so has to believe he is committed this crime.

Defendant is including with this brief exhibits which are the transcripts of the conversations on five different dates.  Defendant has been notified by the government that it intends to introduce in evidence certain portions of each transcript.  The portions which defendant is requesting be excluded are bracketed on the pages within each transcript listed below. Defendant will scan and e-mail each  exhibit transcript as well as deliver to the court hard copies.  The Exhibit Transcript for each date and the pertinent pages bracketed are listed here.

**Exhibit A– December 18, 2014 Transcript.**

Pages: 8-9, 21, 26, 27-29, 30-31, 45, 48-49.

**Exhibit B–January 28, 2015 Transcript.**

Pages: 14-15, 17-18, 20, 23-24, 27.

**Exhibit C–January 29, 2015 Transcript**

Pages: 9, 10-12, 13-14, 15, 18, 26-27.

**Exhibit D–March 18, 2015 Transcript**

Pages 6-7, 17.

**Exhibit E–March 25, 2015 Transcript.**

Pages 19, 27, 29, 33, 36-37, 38-39, 42, 53.

**E. ARGUMENT.**

Under F.R.Evid. 404(b) evidence of a prior act is not admissible to prove a person's character to show that on the occasion in question he acted in accordance with that character.  However, it may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident on the part of the defendant.  Balancing against the admission of evidence under Rule 404(b) is Rule 403 which allows the Court to exclude even relevant evidence if at trial its probative value is substantially outweighed by a danger of either unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Defendant has strong views about the government's policies and the conduct of its agents at all levels.  He strongly feels government has trampled upon the constitutional rights of United States citizens.  He publicly aired those views on webcasts.  He isn't optimistic that the government's policies and actions will change for the better, and believes that there is an imminent armed conflict approaching between the citizens of this country and the government as a last resort to making public officials start safeguarding constitutional rights.

Defendant discussed in webcasts what needs to happen if such a conflict starts and the government is going to be successfuly taken over by citizens who value the constitution. Some of these discussions involved tactics, weaponry and strategy that the citizens, who defendant believes are the true patriots, would need to employ to be on an equal footing with the government in such a conflict. That is the background of defendant coming to the attention of law enforcement. These discussions were also part of the audio taped conversations which the government seeks to introduce at trial.

Defendant has ideas and strategies for forming Committees on Safety who would determine if government officials were violating their oaths or committing crimes. The Committees on Safety would also serve as a local infrastructure for order in the event of a government collapse in the wake of a conflict. He felt citizens in Montana should exercise their statutory rights to perform citizen arrests of corrupt officials. Defendant had little tolerance for officials who he believed took advantage of their positions or who abused the rights of citizens in various situations. Defendant had become an advocate for these citizens in specific situations.

Defendant's statements about these issues either in public, on his webcasts, or in what he believed to be private conversations with government informants posing as like minded patriots, do not show that he intended in this instance to acquire a shotgun which functioned as a machine gun. They do not show that he knew that this

is what he was acquiring or taking under his control. There are other statements of defendant in his audio taped conversations which the government points to directly bearing on the transaction in which defendant acquired the firearm at issue in this case. Defendant is not objecting to the jury hearing those statements and they are not the subject of this motion in limine.

The conversations and events which directly bear upon that transaction should be the focus of this trial. Diverting the jury's attention by defendant's collateral statements reflecting his anti-government views, his opinions about what weapons and devices that would be needed in an armed conflict with the government do not zero in on this issue at trial here.

What they do show is that defendant felt the use of flame thrower weaponry, and armored vehicles would be desirable in the event of such armed conflict, but they do not show his intent here to acquire a machine gun. Further these collateral statements are going to intolerably tempt the jury to believe that because defendant had these views, then he had to have had the intent to want a machine gun. That would be unfairly prejudicial to the defendant. The allowance of these statements would simply foist upon the jury needless evidence to smear the defendant and make him out to be a bad person who had to have wanted a machine gun.

Defendant in this motion is simply asking the Court to let the government's evidence on the transactions itself stand on their own so as to not make the jury

unduly prejudiced against the defendant with collateral evidence.  Defendant understands the government cannot try its case in a vacuum, and that the general grounds which brought defendant to the government's attention, and which caused it to utilize undercover agents must be allowed to be presented.  The government's case should be allowed to be presented in context but not in a manner which deprives defendant of a fair trial.

    RESPECTFULLY SUBMITTED this 15th day of October, 2015.

                    /s/ Mark S. Werner
                    MARK S. WERNER
                    Federal Defenders of Montana
                      Counsel for Defendant

# CERTIFICATE OF SERVICE - LR 5.2(b)

      I hereby certify that on October 15, 2015, a copy of the foregoing was served upon the following persons by the following means:

<u>1, 2</u>  CM/ECF
<u>    </u>  Hand Delivery
<u>3, 4</u>  Mail
<u>    </u>  Overnight Delivery Service
<u>    </u>  Fax
<u>    </u>  E-Mail

1. CLERK, U.S. DISTRICT COURT

2. BRYAN WHITTAKER
   United States Attorney's Office
   Assistant United States Attorney's Office
   901 Front Street, Suite 110
   Helena, MT 59626
       Counsel for the United States of America

3. UNITED STATES PROBATION OFFICE
   2601 2nd Avenue North, Suite 1300
   Billings, MT 59101

4. WILLIAM KRISSTOFER WOLF
       Defendant

                                       /s/ Mark S. Werner
                                       MARK S. WERNER
                                       Federal Defenders of Montana
                                            Counsel for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Memorandum in Support of Defendant's Request for Permission to File Motion in Limine is in compliance with Local Rule 12.1(e).  The Brief's line spacing is double spaced.  The brief is proportionately spaced, the body of the argument has a Times New Roman typeface, 14 point size and contains 3,756 words, excluding tables and certificates.

DATED this 15th day of October, 2015.

                                      /s/ Mark S. Werner
                                      MARK S. WERNER
                                      Federal Defenders of Montana
                                            Counsel for Defendant